UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| JAY CHANDLER, ) | |
| ) | |
| Petitioner-Defendant, ) | |
| ) | |
| v. ) | Case Nos. 16-cr-20040-2-JES |
| ) | 20-cv-2291-JES |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Respondent-Plaintiff. ) | |

# ORDER AND OPINION

**JAMES E. SHADID, U.S. District Judge:**

Before the Court is a Petitioner-Defendant Jay Chandler's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (d/e 97). Chandler claims that his sentence should be vacated or reduced by two points because Judge Bruce, who presided over Chandler's criminal proceedings, was biased and should have recused himself. For the reasons below, the Court DENIES the Motion (d/e 97) and DECLINES to issue a Certificate of Appealability.

## I. BACKGROUND

### A. Chandler's Criminal Proceedings

On July 12, 2017, Chandler was charged via superseding indictment with two-counts of distributing 28 grams or more of cocaine base (Counts One and Three) in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). Indictment (d/e 11). On March 9, 2018, Chandler pled guilty to Count Three pursuant to a written plea agreement (d/e 60). In the plea agreement, and subject to the Court's approval, the parties agreed to a sentence of sixty (60) months' imprisonment and a four-year term of supervised release. Plea Agreement ¶ 17 (d/e 60). This sentence was the

statutory minimum sentence for the charge. *Id.*; 21 U.S.C. § 842(b)(1)(B). As part of his plea agreement, Chandler also waived his right to appeal and collaterally attack his sentence. Plea Agreement ¶ 22-23. The collateral attack waiver specifically provides:

> The defendant also understands that he has a right to attack his conviction and/or sentence collaterally on the grounds that it was imposed in violation of the Constitution or laws of the United States; that the Court was without proper jurisdiction; or that the conviction and/or sentence (including, but not limited to, the amount of any fine or restitution imposed) were otherwise subject to collateral attack. The defendant understands such an attack is usually brought through a motion pursuant to Title 28, United, United States Code, Section 2255. The defendant and the defendant's attorney have reviewed Section 2255, and the defendant understands his rights under the statute. Understanding those rights, and having thoroughly discussed those rights with the defendant's attorney, and in exchange for the concessions made by the United States in this Plea Agreement, the defendant hereby knowingly and voluntarily waives the defendant's right to challenge any and all issues relating to the defendant's plea agreement, conviction and sentence, including any fine or restitution, in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255. The defendant acknowledges and agrees that the effect of this waiver is to completely waive any and all rights and ability to appeal or collaterally attack any issues relating to the defendant's conviction and to the defendant's sentence so long as the sentence is within the maximum provided in the statutes of conviction, except only those claims which relate directly to the negotiation of this waiver itself, involuntariness, and to the ineffective assistance of counsel.

*Id.* ¶ 23.

On March 26, 2018, District Judge Colin Bruce accepted Chandler's binding guilty plea, and on July 23, 2018, Judge Bruce sentenced Chandler to the agreed term of sixty (60) months' imprisonment and four years of supervised release. *See* Judgment (d/e 77). Chandler did not appeal.

### B. Discovery of Ex-Parte Communications Between Judge Bruce and the United States Attorney's Office.

As stated above, United States District Judge Colin S. Bruce presided over Chandler's criminal proceedings. For the purposes of this Opinion, the Court assumes the reader's

familiarity with the facts surrounding Judge Bruce's ex parte communications with the United States Attorney's Office for the Central District of Illinois ("the Office"). These facts have been comprehensively discussed and analyzed by the Seventh Circuit Judicial Council and the Seventh Circuit Court of Appeals, and are recounted here only in a summary fashion. *See In re Complaints Against Dist. Judge Colin S. Bruce*, Nos. 07-18-90053, 07-18-90067 (7th Cir. Jud. Council May 14, 2019) (available at http://www.ca7.uscourts.gov/judicial-conduct/judicialconduct_2018/07_18-90053_and_07-18-90067.pdf); *United States v. Williams*, 949 F.3d 1056 (7th Cir. 2020); *United States v. Atwood*, 941 F.3d 883 (7th Cir. 2020).

Prior to his appointment to the judiciary, Judge Bruce worked in the Office in Urbana, Illinois, in the Central District of Illinois for twenty-four years. In August 2018, a newspaper reported that Judge Bruce had engaged in ex parte communications with the Office regarding the criminal trial of *United States v. Nixon*, a case he was presiding over. In the emails to a paralegal at the Office, Judge Bruce criticized a novice prosecutor, complaining that her weak cross examination had turned the case "from a slam-dunk for the prosecution to about a 60-40 for the defendant," and called the defendant's testimony "bullshit." Upon learning of the emails, the undersigned, in my capacity at the time as Chief District Judge, removed Judge Bruce from all cases involving the Office. *See Williams*, 949 F.3d at 1059.

The Office conducted a search of its email archives between Judge Bruce's chambers and the Office, finding over one-hundred ex parte communications. The majority of the emails addressed ministerial matters. However:

> they often showed Judge Bruce cheering on Office employees and addressing them by nicknames. For example, Judge Bruce corresponded ex parte with a secretary in the Office about scheduling for Atwood's co-defendant, writing, "Roger-dodger. GO SONCHETTA [a nickname for the secretary]!" And after a pretrial conference, Judge Bruce reassured a prosecutor about a filing miscommunication: "My bad. You're doing fine. Let's get this thing done." At

> other times, Judge Bruce wrote to prosecutors in the Office to congratulate and thank them for persuading [the Seventh Circuit] to affirm his decisions.

*Atwood*, 941 F.3d at 885.

In 2019, the Judicial Council of the Seventh Circuit reviewed two complaints filed against Judge Bruce. A Special Committee was appointed by Chief Judge Diane P. Wood to investigate the complaints. After conducting interviews and a hearing, the Special Committee issued a report and recommendations, which were adopted in full by the Judicial Council of the Seventh Circuit. *In re Complaints Against Dist. Judge Colin S. Bruce*, Nos. 07-18-90053, 07-18-90067 (7th Cir. Jud. Council May 14, 2019). The Judicial Council publicly reprimanded Judge Bruce for his practice of ex parte communications and found it violated Canon 3(a)(4) of the Code of Conduct for United States Judges. *Id*. Judge Bruce was also ordered to remain unassigned to matters involving the Office until September 1, 2019. *Id*. However, the Judicial Council "identified no evidence suggesting that Judge Bruce's ex parte contact or relationship with the U.S. Attorney's Office in the Central District of Illinois impacted his decision making in any case." *Id*. Further, with the exception of the *Nixon*-related and appeal-related emails, the Special Committee saw "no evidence of Judge Bruce discussing the merits of pending cases with the Office ex parte." *Id*.

### C.  Chandler's § 2255 Motion

Chandler filed this Motion to Set Aside, Vacate, or Correct Sentence pursuant to 28 U.S.C. § 2255 (d/e 97) on October 13, 2020. He argues that Judge Bruce violated the federal recusal statute, 18 U.S.C. § 455(a), by failing to recuse himself from Chandler's case. Chandler also argues that Judge Bruce's failure to recuse violated Chandler's due process rights because Judge Bruce was actually biased against criminal defendants, including Chandler. With regards to the timeliness of the petition, Chandler writes that he was "counseled to wait to file any

pleading while the Federal Public Defender Office and the United States Attorney's Office litigated the matter in *United States v. Nixon,* 15-20057. I was told by attorney Thomas W. Patton that he had negotiated an agreement with the United States Attorney's office to toll, or suspend the statute of limitations for filing a motion under [28] U.S.C. § 2255 based on Judge Bruce's misconduct." Mot. at 12. For relief, Chandler suggests that the Court impose a two-point reduction in sentence or to vacate, dismiss, or set aside his conviction.

After being ordered to respond, the Government filed its response on November 23, 2020 (d/e 99). The Government argues that the Seventh Circuit's decision in *United States v. Williams*, 949 F.3d 1056 (7th Cir. 2020), forecloses Chandler's actual bias claim, and that his statutory claim cannot be brought in a § 2255 motion. The Government also argues that Chandler waived his right to assert his claims in his plea agreement, procedurally defaulted his claims, and his claims are untimely. Chandler has not filed a timely reply.

## II. LEGAL STANDARD

Under 28 U.S.C. § 2255(a), a prisoner may move the sentencing court to vacate, set aside, or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief under § 2555 is an extraordinary remedy because a § 2255 petitioner has already had "an opportunity for full process." *Almonacid v. United* States, 476 F.3d 518, 521 (7th Cir. 2007). Accordingly, it "is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013) (citations omitted).

## III. DISCUSSION

**A. The Court Declines to Determine Whether Chandler's Claims are Timely Under AEDPA.**

As a threshold matter, the Court must consider whether Chandler's claims are timely. A one-year period of limitation applies to § 2255 petitions. 28 U.S.C. § 2255(f). The one-year period begins to run from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f)(1)-(4). The timeliness of each claim must be considered independently. *Davis v. United States*, 817 F.3d 319, 327 (7th Cir. 2016).

Here, Chandler's claims are not timely under § 2255(f)(1) because his judgment of conviction became final in 2018, and he did not file his petition until October 2020. Nor does Chandler rely on a newly recognized right (§ 2255(f)(3)), or assert claims that government impeded him from making a motion (§ 2255(f)(2)).

As the Government points out, Chandler's claims, however, do rely on facts that were not reasonably able to be discovered with reasonable diligence at the time of his conviction. The Court finds that at least by October 25, 2018, the emails underlying Chandler's claim here had been disclosed in an amended motion for a new trial in Sarah Nixon's criminal case and were

reasonably able to be discovered with reasonable diligence. *See Nixon,* Case No. 15-cr-20057 (C.D. Ill.) (d/e 173). Still, to be timely under § 2255(f)(4), Chandler needed to file his motion by October 25, 2019. He fell short of this deadline by a year.

However, Chandler states that he was "counseled to wait to file any pleading while the Federal Public Defender Office and the United States Attorney's office litigated the matter in *United States v. Nixon,* 15-20057. I was told by attorney Thomas W. Patton that he had negotiated an agreement with the United States Attorney's office to toll, or suspend the statute of limitations for filing a motion under [28] U.S.C. § 2255 based on Judge Bruce's misconduct." Mot. at 12. The Government's brief asserts that Chandler's motion is untimely, but does not respond to this allegation. The relevant *Nixon* litigation was decided on August 19, 2020. *See United States v. Nixon,* 15-20057 (C.D. Ill.) Order, d/e 224. Chandler's motion was filed within sixty days of this decision, and it is possible it is covered by the alleged tolling agreement.

Additionally, the Court may, in exceptional circumstances find equitable tolling appropriate and deem an untimely motion as timely. *See*, *e.g., Lombardo v. United States*, 860 F.3d 547 (2017) (finding that exceptional circumstances did not exist where postconviction counsel was ineffective for miscalculating the statute of limitations). Without further information, the Court cannot determine whether Chandler's motion may warrant equitable tolling. As this case can easily be decided on other issues, the Court will decline to determine whether Chandler's claims could be considered timely.

**B. Chandler's Due Process Claim is Foreclosed by *United States v. Williams*, 949 F.3d 1056, 1061 (7th Cir. 2020).**

"Due process guarantees 'an absence of actual bias' on the part of a judge." *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016) (citing *In re Murchison,* 349 U.S. 133, 136, 75 S. Ct.

623 (1955)). "[T]he Due Process Clause may sometimes demand recusal even when a judge 'ha[s] no actual bias.' Recusal is required when, objectively speaking, 'the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.'" *Rippo v. Baker*, 137 S. Ct. 905, 907 (2017) (*Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813, 825, 106 S. Ct. 1580 (1986)). "Judicial-bias claims are not subject to harmless-error review." *Gacho v. Wills,* No. 19-3343, 2021 WL 420314, at *8 (7th Cir. Feb. 8, 2021).

However, "most matters relating to judicial disqualification d[o] not rise to a constitutional level.'" *Suh v. Pierce*, 630 F.3d 685, 691 (7th Cir. 2011) (quoting *FTC v. Cement Institute*, 333 U.S. 683, 702 (1948)). The analysis begins with presuming "the honesty and integrity of those serving as adjudicators." *Del Vecchio v. Illinois Dep't of Corr.*, 31 F.3d 1363, 1375 (7th Cir. 1994) ("Disqualification is required only when the biasing influence is strong enough to overcome that presumption, that is, when the influence is so strong that we may presume actual bias.") (internal citations omitted). Disqualifying influences are those that strike "at the heart of human motivation, that an average man would find it difficult, if not impossible, to set the influence aside." *Id.* at 1373. However, the risk of actual bias does not rise to an unconstitutional level merely because there is an appearance of bias, without there also being a high risk of bias. *Suh,* 630 F.3d at 691 (finding no unconstitutional risk of bias where a judge was not aware of a purported relationship between himself and the family of the victim in a murder case). There are a limited set of circumstances that meet this standard: (1) when there is actual bias; (2) "when a judge earlier had significant, personal involvement as a prosecutor in a critical decision regarding the defendant's case"; (3) when a judge has a financial interest in the case's outcome; and (4) when a judge becomes "personally embroiled" with a litigant. *United States v. Williams*, 949 F.3d 1056, 1061 (7th Cir. 2020) (citations omitted).

Here, Chandler's cursory argument states that Judge Bruce was actually biased against criminal defendants, including him, and in favor of the United States. In *United States v. Williams*, 949 F.3d 1056 (7th Cir. 2020), the Seventh Circuit addressed due process arguments regarding Judge Bruce presiding over a criminal trial during the time period he was engaging in improper ex parte communications with the Office. The Seventh Circuit rejected the argument Chandler now makes. With regard to actual bias and the four circumstances where courts have found an unconstitutional potential for bias under the Due Process Clause, the Seventh Circuit observed that Williams's case "does not fit into these buckets":

> Williams has not provided any evidence of actual bias. To the contrary, the Special Committee found "no evidence and received no allegation that Judge Bruce's conduct or ex parte communications impacted any of his rulings or advantaged either party." It is undisputed that none of the ex parte communications concerned Williams's case. Nor is there any evidence that Judge Bruce had a pecuniary interest in the outcome, previously worked on the case as a prosecutor, or became "personally embroiled" with the parties.

*Id.* at 1061-62. Williams argued that an exchange in which Judge Bruce stated that he did not think a prosecutor was "sneaky" was "proof of Judge Bruce's personal bias in favor of the government because he 'personally vouch[ed] for [the prosecutor's] integrity.'" *Id.* at 1062. The Seventh Circuit rejected this argument, finding "nothing improper about this exchange, which occurred before both parties, on the record, in open court, and outside the presence of the jury." *Id.* Moreover, the Seventh Circuit rejected Williams' argument that Judge Bruce's preexisting friendship with specific members of the prosecution team in Williams' case created a due process violation, finding that Williams had presented no evidence to rebut the presumption that judges are capable of rising above such potential biasing influences. *Id.*

Here, Chandler points to no evidence of actual bias specific to his case, but relies on the ex parte communications revealed regarding other cases. *Williams* forecloses this argument; therefore, his due process claim must be denied.

### C. Chandler's Federal Recusal Statute Claim is Not Cognizable on Collateral Review.

This Court has previously found that a claim of a violation of the federal recusal statute is not cognizable in collateral review. *See Shannon v. United States*, No. 18-CV-2233-JES, 2020 WL 6947421, at *16 (C.D. Ill. Nov. 25, 2020). As stated above, a petitioner may avail himself of § 2255 relief only if he can show that there are "flaws in the conviction or sentence which are jurisdictional in nature, constitutional in magnitude or result in a complete miscarriage of justice." *Boyer v. United States*, 55 F.3d 296, 298 (7th Cir. 1995), *cert. denied*, 116 S. Ct. 268 (1995). Section 2255 is limited to correcting errors that "vitiate the sentencing court's jurisdiction or are otherwise of constitutional magnitude." *Guinan v. United States*, 6 F.3d 468, 470 (7th Cir. 1993) (citing *Scott v. United States*, 997 F.2d 340 (7th Cir. 1993)). A § 2255 motion is not a substitute for a direct appeal. *Doe v. United States*, 51 F.3d 693, 698 (7th Cir. 1995), *cert. denied*, 116 S. Ct. 205 (1995); *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996).

Here, the Court has already determined that Chandler has not shown a constitutional error as a result of Judge Bruce presiding over his trial as the Court has found there was no due process violation. Chandler has not presented any argument for why a violation of the federal recusal statute alone could be considered jurisdictional in nature or qualify as a miscarriage of justice. Moreover, Judge Bruce did not exercise discretion in sentencing Chandler, as he sentenced Chandler to the 60-month imprisonment sentence that Chandler had agreed to in his

plea agreement. There is no possibility of a miscarriage of justice as a result of Judge Bruce's failure to recuse. Accordingly, Chandler's claim must be dismissed.

### D. Chandler's Federal Recusal Statute Claims are Waived Under His Plea Agreement.

The Government also argues that Chandler's plea agreement was voluntarily entered into and expressly waived the right to collaterally attack his sentence in § 2255 proceeding. Chandler received valuable concessions, including an agreement to sentence Chandler to the statutory minimum sentence of 60 months' imprisonment. Because the right to collaterally attack a conviction or sentence is a statutory creation, it "can be waived." *United States v. Wilkozek*, 822 F.3d 364, 367 (7th Cir. 2016). Moreover, "[i]t is well-settled that waivers of direct and collateral review in plea agreements are generally enforceable." *Hurlow v. United States*, 726 F.3d 958, 964 (7th Cir. 2013); *see Oliver v. United States*, 951 F.3d 841, 846 (7th Cir. 2020) ("Finality matters in plea agreements, especially when the parties have negotiated for it expressly."). The Seventh Circuit has "recognized only a 'few narrow and rare' grounds for not enforcing a voluntary and effectively-counseled waiver of direct appeal or collateral review," including "if a district court relied on a 'constitutionally impermissible factor' like race or gender; if the sentence exceeded the statutory maximum; or if the proceedings lacked a 'minimum of civilized procedure.'" *Oliver*, 951 F.3d at 844 (7th Cir. 2020); *United States v. Campbell*, 813 F.3d 1016, 1018 (7th Cir. 2016).

The Court declines to hold that claim of judicial bias under the due process clause could be waived in a plea agreement. The rights to a fair tribunal and an unbiased judge likely qualify as "minimum[s] of civilized procedure," and a plea agreement seeking to waive the right to bring due process claims based on violations of these rights could not be enforced.

However, the same is not true with claims solely based on the Federal Recusal Statute. When the due process clause is not invoked, a claim resting solely on the federal recusal statute can be waived in a plea agreement and enforced in collateral proceedings. And, the Court finds that Chandler's federal recusal statute claim was waived in his plea agreement, barring Chandler from raising the claim now.

## IV.  CERTIFICATE OF APPEALABILITY

If Petitioner seeks to appeal this decision, he must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c) (providing that an appeal may not be taken to the court of appeals from the final order in a § 2255 proceeding unless a circuit justice or judge issues a certificate of appealability). A certificate of appealability may issue only if Petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a claim is resolved on procedural grounds, as it was here, a certificate of appealability should issue only if reasonable jurists could disagree about the merits of the underlying constitutional claim *and* about whether the procedural ruling was correct. *Flores-Ramirez v. Foster*, 811 F.3d 861, 865 (7th Cir. 2016) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Here, in light of Seventh Circuit precedent, the Court does not find that reasonable jurists could disagree about whether the Court's ruling on the merits of Chandler's due process claim was correct or whether the Court's procedural rulings were correct. Accordingly, the Court declines to issue a certificate of appealability.

## V.  CONCLUSION

For the reasons stated, the Court DENIES Petitioner Jay Chandler's Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. § 2255 (d/e 97). The Court DECLINES to issue a certificate of appealability.

The Clerk is directed to enter judgment and close the accompanying civil case, No. 20-cv-2291.

Signed on this 18th day of February 2021.

                                            */s/ James E. Shadid*
                                            James E. Shadid
                                            United States District Judge